# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SURESH DABAS : :
: :
v. : Civil No. CCB-17-392
: :
MEGAN J. BRENNAN : :

## **MEMORANDUM**

Plaintiff Suresh Dabas, an employee of the United States Postal Service ("USPS"), filed this action against Megan J. Brennan in her official capacity as Postmaster General of USPS. He alleges discrimination on the basis of race and national origin in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and retaliation in violation of both Title VII and the Americans with Disabilities Act of 1990 ("ADA"). The defendant has moved to dismiss Mr. Dabas's complaint or, in the alternative, for summary judgment. The issues in this case have been fully briefed, and no hearing is necessary. See Local R. 105.6. For the reasons stated below, the motion will be granted.

## BACKGROUND

Mr. Dabas identifies as Asian and Indian. (Dabas Aff. ¶ 1, ECF No. 14-2.) He has been employed by the United States Postal Service since April 1991, and became a Custodial Laborer in 1996. (*Id*; Compl. ¶ 8, ECF No. 1) He claims his performance has been satisfactory and he has received performance awards. (Dabas Aff. ¶ 2.) Mr. Dabas suffered from two heart attacks while he was working in 2010 and 2011, and states that his supervisors have been aware that he had right side weakness due to a stroke in 2003. (*Id.* ¶ 3-4.) He has made reference to Equal

1

Employment Opportunity complaints he filed prior to the incidents giving rise to this action, but has provided only minimal details relating to these complaints. (*See id.* ¶ 6; Mem. Opp. Def.'s Mot. Dismiss ¶ 7-10, ECF No. 14-1.) From 1996 to 2003, he worked at the Eastern Shore Processing and Distribution Facility. From 2003 to 2012, he worked at the Easton Post Office. In December 2012, he was transferred to the Eastern Shore facility. After filing an EEO complaint on December 22, 2012, he was transferred back to the Easton Post Office in January 2013. (*Id.* ¶ 8; Compl. ¶16.) Mr. Dabas claims his supervisor, Charles F. Geschwilm, engaged in "a pattern of harassment, micro-management, and singling [him] out for observations and corrections" that was not applied to other custodians after he returned to the Easton Post Office in January 2013. (Dabas Aff. ¶ 8-9.)

On September 10, 2013, Mr. Geschwilm instructed him to trim hedges outside of the post office. (*Id.* ¶ 10.) Mr. Dabas did not trim the hedges; he claims he was not given a deadline by which to complete the work. (*Id.*) On September 19, 2013, Mr. Geschwilm issued a Letter of Warning indicating that Mr. Dabas failed to "meet the requirements of [his] position in the area of performance" because he did not trim the hedges by the deadline of September 13, 2013. (Ex. B, Sept. 19, 2013 Letter of Warning at 1, ECF No. 14-5.) Mr. Dabas did not sign the letter, as he contests whether he was given a deadline by which to complete the work. (Dabas Aff. ¶ 10.) Plaintiff contacted the USPS Equal Employment Opportunity Office ("EEO") about discriminatory harassment by Mr. Geschwilm after this incident. *See* Compl. ¶ 27; Ex. F, USPS EEO Acceptance for Investigation, ECF No. 11-5.) The Letter of Warning was reduced to an "official discussion" on November 20, 2013. (Grievance Settlement, ECF No. 11-4.)

Nonetheless, Mr. Dabas continued to pursue his EEO complaint, filing an official complaint on December 7, 2013. (USPS EEO Acceptance for Investigation, Jan. 10, 2014, ECF No. 11-5.)

On July 16, 2014, Mr. Dabas was once again instructed to trim the hedges outside the post office. (Ex. J, Aug. 12, 2014 Letter of Warning at 1, ECF No. 14-13.) Mr. Dabas claims that he was told to mow the lawn by Dan Wood, the Postmaster of Easton Post Office, and was not permitted to take a break or get a drink of water on July 17, 2014. He perceived this as harassment, and contacted the EEO on July 25, 2014. (Compl. ¶ 31.)

On July 25, 2014, the hedges still had not been trimmed. (Ex. J at 1.) On July 30, 2014, Mr. Dabas provided a note from a doctor describing right hand weakness that made it difficult for Mr. Dabas to mow grass and trim hedges. (Ex. J at 1; Dabas Aff. ¶ 12.) On July 30, 2014, Mr. Dabas was provided with single-handed pruning clippers so that he could trim the hedges, and subsequently was provided with electric trimmers. (*Id.*; Dabas Aff. ¶ 14-15.) Mr. Dabas did not complete the hedge trimming as requested. (Ex. J at 1.) On August 12, 2014, Mr. Geschwilm issued another Letter of Warning regarding Mr. Dabas's failure to trim the hedges as requested. (*Id.*) Mr. Dabas refused to sign the letter, alleging a failure to provide medical accommodations. (Dabas Aff. ¶ 13.)

On September 19, 2014, Mr. Dabas was suspended for seven days as a result of the Letter of Warning and failure to report for work as scheduled.[1] On November 3, 2014, Mr. Dabas filed an official EEO complaint. (EEO Acceptance of Investigation, Dec. 31, 2014 at 1, ECF No. 11-11.) His suspension was rescinded on November 5, 2014 for "procedural defects" with its

---

[1] Both the plaintiff and defendant refer to this suspension as stemming from the Letter of Warning. (*See* Mem. Opp. Def.'s Mot. Dismiss at 15, ECF No. 14-1; Mem. Supp. Def.'s Mot. Dismiss at 4, ECF No. 11-1.) At the Prehearing Conference resulting from Mr. Dabas's EEOC complaint, the Administrative Judge explained that Mr. Dabas did not report for work on September 19, 2014, for which Mr. Dabas was suspended. Mr. Dabas did not dispute his failure to report for work. (Corrected Tr. Prehearing Conference, May 16, 2016 at 22:12-23:5, ECF No. 11-14.) Nonetheless, the court will assume that the suspension was based to some degree on the Letter of Warning.

issuance. (Corrected Tr. Prehearing Conference, May 16, 2016 at 23:6-9.) Mr. Dabas appears to have contested the issues accepted for investigation, but was informed that he would have the "opportunity to clarify and expound on the background incidents [he] identified." (EEO Letter to Mr. Dabas, Jan. 12, 2015, ECF No. 11-12.) Mr. Dabas's EEO complaints were consolidated, and his motion to amend his complaint to include an ADA discrimination claim was denied on May 28, 2015. (Order at 1, ECF No. 11-6.) The claims that remained in the consolidated case were for discrimination based on race and national origin under Title VII and retaliation related to the 2013 warning letter, and retaliation under Title VII related to the 2014 warning letter. (*Id.* at 1-3.) The administrative judge ultimately ruled against Mr. Dabas on all of these claims. (Corrected Tr. Prehearing Conference, May 16, 2016 at 54-55; Bench Decision, July 19, 2016 at 18, ECF No. 11-14.)

Mr. Dabas filed this complaint on February 10, 2017. The defendant filed this motion to dismiss, or for summary judgment, on July 18, 2017. (ECF No. 11.) Mr. Dabas filed his response in opposition on August 30, 2017. (ECF No. 14.) The defendant filed its reply on October 11, 2017. (ECF No. 17.)

## JURISDICTION

The defendant seeks to dismiss Mr. Dabas's ADA claim for lack of subject matter jurisdiction because he allegedly failed to exhaust administrative remedies. Under the ADA, "a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court," *Sydnor v. Fairfax Cty., Va.*, 681 F.3d 591, 593 (4th Cir. 2012), and failure to exhaust administrative remedies on an ADA claim deprives this court of subject matter jurisdiction over that claim, see *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01 (4th

Cir. 2009).[2] "A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *see also Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996). "In determining what claims a plaintiff properly alleged before the EEOC, we may look only to the charge filed with that agency," but those claims "must be construed with utmost liberality." *Balas v. Huntington Ingalls Industries, Inc.,* 711 F.3d 401, 408 (4th Cir. 2013) (quoting *Alvarado v. Bd. Of Trs. Of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988)). The scope of a plaintiff's complaint is limited to those claims that are "reasonably related" to the EEOC charge and that could be expected to follow from a "reasonable administrative investigation." *Smith*, 202 F.3d at 247-48.

Mr. Dabas moved to add an ADA discrimination claim to his race and national origin discrimination claims before the EEOC. The Administrative Judge denied this motion, so the merits of Mr. Dabas's ADA discrimination claim were not ruled on at the administrative stage. In his complaint, he filed a count of retaliation under the ADA, not the discrimination claim he sought to add to the EEOC complaint. The race and national origin complaints arose from the same hedge trimming incidents that are central to the ADA retaliation claim. These incidents necessitated investigation into Mr. Dabas's medical restrictions at the time of these incidents; indeed, his medical status and related restrictions and accommodations are inextricably tied to his claims of race and national origin discrimination. Additionally, the EEOC did investigate his claim of retaliation under Title VII, which is legally similar to such a claim made under the ADA. The ADA retaliation claim brought in litigation is reasonably related to those investigated by the EEOC, such that the central facts could, and likely were, adequately investigated by the

---

[2] This case centered on Title VII of the Civil Rights Act of 1964, not the ADA. However, "courts have routinely used Title VII precedent in ADA cases." *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001).

responsible agency. *See Smith*, 202 F.3d at 247-48; *Evans*, 80 F.3d at 963. As the EEOC investigation was sufficient regarding this ADA claim, the court finds it has subject matter jurisdiction over that claim, though it will be denied for the reasons that follow.

## STANDARD

Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003). "There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must "be given some indication by the court that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 721 F.3d at 281.

The plaintiffs had adequate notice that the defendant's motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are in themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260-61. Moreover, the plaintiffs referred to the motion in their opposition brief as one for summary judgment and submitted additional documentary exhibits. Rule 56(d) affords plaintiffs the opportunity to seek further discovery

through an affidavit. *See* Fed. R. Civ. P. 56(d); *see also Greater Baltimore*, 721 F.3d 264, 281 ("[The defendant] took 'the proper course' when it filed the Rule 56([d]) Affidavit, 'stating that it could not properly oppose . . . summary judgment without a chance to conduct discovery.'") (citation omitted); *Laughlin*, 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on assertions of inadequate discovery when the nonmoving party failed to make an appropriate motion under Rule 56([d])). The administrative record in this case was voluminous. The court will consider the affidavits and additional materials submitted by the parties and will treat the motion of the defendant as a motion for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the

party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

## ANALYSIS

### 1. Discrimination Claims

Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). In order to state a prima facie claim of discrimination under Title VII, a plaintiff must plausibly allege: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class*." Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). A plaintiff who bases their claim "entirely upon a comparison to an employee from outside the protected class must demonstrate that the comparator was similarly situated in all relevant respects," including "that the employees dealt with the same supervisor, were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F.Supp.3d 398, 420 (D.Md. 2015) (internal citations and quotation marks omitted). An employer can rebut a prima facie case of discrimination with a "legitimate, nondiscriminatory reason for

8

the employment action." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). To survive summary judgment, the employee must demonstrate that the employer's permissible reason for an adverse employment action is a pretext for discrimination. *Id.*

Mr. Dabas relies solely on comparison to similarly situated employees to establish his prima facie claim. He identifies several employees who share his supervisor and position in his complaint, listing their names and races. He fails, however, to demonstrate that they engaged in the same conduct with a different outcome. Mr. Dabas failed to complete assigned tasks and was reprimanded for it. He does not allege that any of the "similarly situated" employees similarly failed to complete assigned tasks, only that they were not issued Letters of Warning or suspended. Mr. Dabas has failed to establish a prima facie case of disparate treatment by comparison to similarly situated employees, but even if he had, his claim would still fail because he has not provided sufficient facts to dispute the defendant's legitimate, nondiscriminatory reasons for issuing the Letters of Warning or the seven-day suspension.

Regarding the 2013 Letter of Warning, Mr. Dabas contests whether a deadline was set prior to the issuance of the Letter of Warning. This fact is immaterial. Even if a specific deadline was not communicated when the work was assigned, Mr. Dabas still failed to complete an assigned task within a reasonable time frame. He was told to trim the hedges on September 10, 2013. Three days later, the hedges were not trimmed. On the morning of September 13, Mr. Dabas was told once again to trim the hedges, and by the end of the day, the task had not been completed. (Ex. B, Sept. 19, 2013 Letter of Warning at 1.) In his response, Mr. Dabas argues that his medical condition prevented him from completing the assigned work in a timely manner. Yet, there has been no evidence submitted regarding any documented medical condition, nor

corresponding notification to his supervisors, in 2013. Mr. Dabas's failure to complete his work is a legitimate, nondiscriminatory reason for issuing the 2013 Letter, especially in light of previous discussions regarding his job expectations that are referenced in the letter. This reason also plausibly covers any heightened supervision that may have occurred during the relevant time period.[3]

Regarding the 2014 Letter of Warning, the only relevant fact in dispute that Mr. Dabas has alleged is whether he was capable of completing the work assigned, given his medical condition. Mr. Dabas claims the assigned work in 2014 was in violation of his medical restrictions that arose in July 2014. He was first assigned to trim the hedges on July 16, 2014. The earliest date on which he alleges his supervisors became aware of his medical restrictions was on July 22, 2014. *See* Compl. ¶ 29. He claims that Mr. Geschwilm refused to accept this accommodation request, and that he complained to Dee Collins, the Shop Steward, about this refusal on July 23, 2014. (Compl. ¶ 30.) There has been no evidence, in the form of either an affidavit or documentation, provided to support this date, or Mr. Geschwilm's refusal to accept any accommodation request. Regardless of when exactly his supervisors became aware of the medical restriction, the sequence of events is clear: Mr. Dabas was told to trim the hedges. He failed to do so, owing to a medical restriction. An accommodation was provided. He still failed to complete the assigned task, and was issued a Letter of Warning and subsequently suspended for seven days.

Mr. Dabas has not provided any evidence sufficient to demonstrate that the provided reasons for the Letters of Warning and suspension were pretext. He does not allege, much less

---

[3] The 2013 Letter of Warning also apparently had no effect on Mr. Dabas's conditions of employment, and therefore may not be an adverse action anyway. *See Harris v. Potter*, 310 F. Supp.2d 18, 21 (D. D.C. 2004).

demonstrate, that other employees similarly failed to perform their assigned tasks, yet escaped reprimand. He has not articulated any evidence, nor any specific fact that would suggest evidence exists, of a discriminatory motive behind his supervisors' actions. Though Mr. Dabas has requested further discovery, he has failed to articulate what discovery he seeks with any specificity. Granting discovery into other employees' disciplinary records or seeking some indication of a discriminatory motive from his supervisor without any indication that evidence supporting his case even exists amounts to a fishing expedition. *See Morrow v. Farrell,* 187 F.Supp.2d 548, 551 (D.Md. 2002) (granting summary judgment over requests for discovery that failed to "specify[] what discovery might be needed or pointing to specific facts that might merit further discovery").

As the defendant has articulated a legitimate, nondiscriminatory reason for its actions, and Mr. Dabas has failed to rebut it, the motion for summary judgment will be granted on the discrimination claims.

### 2. Retaliation Claims

To make a claim for retaliation, the plaintiff must establish the following three elements: "(i) that she engaged in a protected activity, (ii) that her employer took adverse action against her, and (iii) that a causal relationship existed between the protected activity and the adverse employment activity." *Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243, 250 (4th Cir. 2015) (internal quotation marks omitted).[4] A plaintiff can demonstrate that an employer "acted adversely" by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable

---

[4] The defendant cites the "but-for" causation standard articulated in *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 210 (4th Cir. 2014). This standard subsequently was determined to be dictum regarding prima facie case determinations. *See Foster v. University of Maryland-Eastern Shore*, 787 F.3d 243, 251 n. 11 (4th Cir. 2015).

worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citations omitted); *see also, Holland v. Washington Homes, Inc.,* 487 F.3d 208, 219 (4th Cir. 2007) ("An adverse employment action is a discriminatory act that adversely affects the terms, conditions, or benefits of the plaintiff's employment") (internal citations and quotation marks omitted). Under the *McDonnell Douglas* framework, after a plaintiff establishes a prima facie case of retaliatory discrimination, the burden then shifts to the employer "to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Foster*, 787 F.3d at 250 (4th Cir. 2015). If the employer makes this showing, the burden shifts back to the plaintiff to demonstrate that the employer's purported non-retaliatory reasons "were not its true reasons, but were a pretext for discrimination." *Id*. If the defendant proffers a legitimate, non-retaliatory reason for its actions, under the *McDonnell Douglas* framework, the plaintiff has the burden of showing that "retaliation was a but-for cause of a challenged adverse employment action." *Id.* at 252.

The court will assume Mr. Dabas has established a prima facie case. He engaged in a protected activity when he complained to the EEO on multiple occasions, including a formal complaint filed on December 7, 2013.[5] Mr. Geschwilm was aware of Mr. Dabas's EEO activity. (*See* Ex. D, Geschwilm Investiative Aff., ECF No. 14-7.; Ex. O., Geschwilm EEO Investigative Aff. At 1, ECF No. 14-18.) The seven-day suspension may have dissuaded a reasonable

---

[5] This is the date on which the EEO's Acceptance for Investigation notes a formal complaint was filed. (ECF No. 14-9).) Mr. Dabas indicates other complaints were made as well, and the defendant has not disputed that they were made.

employee from making or supporting a charge of discrimination.[6]

There are no material facts in dispute, however, upon which Mr. Dabas could show that retaliation was the cause of the suspension. Mr. Dabas was asked to trim the bushes twice, and failed to do so twice. As discussed above, these failures to perform required duties apparently resulted in his seven-day suspension. Additional discovery into motive is not warranted because there is a legitimate reason established by the evidence and a request has not been made with sufficient specificity to avoid constituting a fishing expedition.

Viewing all of the evidence submitted in the light most favorable to Mr. Dabas, he cannot establish that, but for the alleged retaliatory motives, he would not have been issued Letters of Warning or suspended for seven days. Accordingly, the court will grant the defendant's motion for summary judgment on the retaliation claims.

## CONCLUSION

For the reasons stated above, the defendant's motion is granted.

A separate order follows.

\_\_\_3/13/2018_____  _____/s/_____
Date  Catherine C. Blake
 United States District Judge

---

[6] The court will not reach the question of whether the fact that the suspension was eventually rescinded negates its status as an adverse employment action, as neither party raised it, and summary judgment will be granted on other grounds.